Good morning, I'm Nancy Collins here on behalf of Bernard Davis. Without consent, permission, or reasonable suspicion, the police and a probation officer entered the house that Bernard Davis shared with others. They arrested him and searched the home because the Fourth Amendment issue would be dispositive of all the issues in the case. I'll address that one first. When the police entered Mr. Davis' home, they entered by a show of authority. They called for him when he didn't come out of the house. And when the homeowner answered the door, after some delay, they immediately restrained the homeowner and went upstairs and arrested Mr. Davis. They did not have reasonable suspicion that Mr. Davis violated a condition of his community supervision. Well, why didn't they have reasonable suspicion? They did not have reasonable suspicion. Why didn't they have it based on the green neon registered to him that was, according to a witness involved in the robbery? The allegation that there was a chain snatching that had occurred was not a credible and reliable allegation. Mr. Davis was not, also Mr. Davis was not accused of being the person who took the chain, but there was claim that his car was present at this potential chain snatching. There was, of course, the person reporting this chain snatch was extremely intoxicated, which is something that needs to be taken into account in determining the reliability of the allegation as to whether any kind of crime occurred at all. It is really suspect because the amount of alcohol he had admitted consuming would have been so apparent to the police officers on the scene that you have to question whether anything happened. There was a report that a green neon was seen fleeing, driving away from the scene. A green neon is registered to Mr. Davis. The police certainly had a reason to go to Mr. Davis, could have gone to Mr. Davis' house and talked to him. They had a reason to suspect that he might know something about a possible crime, but that does not give them reasonable suspicion that he violated a condition of his probation, which is what would be required to go into his house and arrest him. Okay, thank you. Counsel? Yes. Counsel, you're going to run out of time, I'm afraid, because you've got several issues. We take your, or at least I take your Fourth Amendment argument, but one thing that troubles me is in the search there was turned up the marijuana baggies and then there was a bullet in a drawer that was his drawer, and then there's a rifle that was in his storage room. Now, I'd like you to address the rifle and which arguments are as to evidence of his possession, but before you do that, if the rifle were to drop out, what is the effect of having found the bullet? In other words, is the rifle material if the bullet is established as his? He would still obviously face a serious conviction if the bullet is found to be his, if you take the rifle out of it. So the rifle was in a storage room, a storage room where nothing else in the storage room belonged to Mr. Davis. It was the homeowner's storage room where they kept exercise equipment, luggage, decorations. There's other than, and then there were baggies, the marijuana, there was some marijuana in a drawer inside the storage room, which, you know, our position is it did not belong to Mr. Davis. The mere fact that he had, that there was marijuana in the storage room, which he otherwise had nothing inside, and some marijuana in his bedroom doesn't mean that he possessed all the marijuana in the house. But the marijuana in his bedroom was in bags similar size and weight to the marijuana in the storage room, right? It was. And there was a scale also, wasn't there? There was a scale in the drawer in the storage room with the other marijuana, but really largely generic. There were baggies in his room, right? Yes, yes, but there were generic baggies that people, lots of people that I have in my house, they're just plastic baggies. There's nothing special about them as to being, you know, marijuana stamped or anything. Better be careful about admitting to having baggies. But the baggies in his bedroom were just for his personal use? Yes, there was certainly no evidence otherwise. There was a box of plastic baggies like lots of people have. Was it the owner of the house testified, the female testified, that he'd said, you know, selling drugs was easier to earn a living? There was that statement, which is really the statement that the government bases its case on, that months earlier he had made a comment while driving home with his co-worker from Kentucky Fried Chicken that this Kentucky Fried Chicken job isn't so great and it would be easier to sell drugs, but it doesn't... Harder to sell chicken than to be a drug dealer. I don't know what he was doing at Kentucky Fried Chicken, but, you know, that really doesn't mean that he's forever and always going to be a drug seller and any drugs he'd come across as drugs that he'd want to sell. And that remark, an offhand remark in comparison to working in a fast food restaurant, it's just not... You would have to set aside the jury's verdict. Clearly, you're not supported by the evidence. Yes, and that is... Under Neville's. Yes, that the... It's pretty hard. Well, if you take the case law on a jointly occupied house where the storage room had nothing in it that otherwise belonged to Mr. Davis, the fact that not only were there people who lived in the house who actually had a lot of guns in their own bedroom that Mr. Davis was acquitted of possessing shape if it weren't, I think, if it weren't for the baggies box and the baggies with marijuana in his own room. Well, you know, marijuana is something that is so unfortunately commonly used and possessed, and baggies as well, that that in and of itself doesn't show he controlled and had the ability to control and possess and intend to the things that were in that storage room. It doesn't necessarily prove it. But the question is, on sufficiency of evidence, is whether a rational jury could conclude beyond a reasonable doubt that he had possession of the stuff that was there. And one of the additional factors that we point out when you have this case that is very weak is that the government, in its very beginning of its opening and closing statements, just stated flat out, Mr. Davis is a drug dealer, and because drug dealers possess guns and drug dealers possess marijuana, whatever is in the house must have belonged to him. And it's that kind of propensity argument which pushes this case over that edge. And when you have this very, very, very weak tenuous sufficiency argument where you're in a jointly occupied house and no clear evidence that Mr. Davis had knowledge of and access to and control over these items, that is especially problematic. Could you go back to Judge Fischer's? Yes, yes. I didn't know if you had answered it fully. As to what does the evidence show about possession or control over the rifle found upstairs? The rifle was in a bag in the storage room with no fingerprints and no matching bullets in Mr. Davis's room or anything that indicated Mr. Davis knew about or had access to or control over what was in that rifle, whatever was in the storage room. There was a single bullet found in the bottom of a dresser drawer in Mr. Davis's bedroom. That bullet didn't have anything to do with that rifle or anything else. But how do you answer Judge Fischer's question about what's the significance of the bullet? Can the conviction stand on the bullet even if he possessed the bullet that was in his drawer but did not possess the rifle in the storage room? Or if a rational jury could determine that beyond a reasonable doubt, what's the result? Well, the argument is a sufficiency based on all of them. If a jury found he possessed that single bullet from Bulgaria, they could convict him of that. Of the separate charge. Yes, yes. What's the result in terms of his sentence? Would he get the enhanced sentence? He would still be legally eligible for the sentence that he received, assuming that it was sufficiently established, yes. A 210-month sentence for this antique bullet that was in a dresser, a dresser that didn't belong to him. He rented this room in a house. The dresser belonged to the homeowner who was also the guy who had a lot of guns and was stuck behind a fake wall in his bedroom. And it was a bullet from Bulgaria that had, according to police officers, no sort of available weapon that they knew of that even could use this bullet. So we would ask, and I see my time is just about up. So my last 30 minutes are reserved. Are there any other questions? No, that's fine. Thank you. We'll give you an extra minute on your rebuttal. Okay. For the police, Mr. Dion? It's Michael Dion, Your Honor. Dion. Thank you, Your Honors, and good morning. Good morning. Your Honors, I'll start by talking about the sufficiency of the evidence issues. And when we talk about what connects the defendant, Bernard Curtis Davis, to the rifle and the drugs found in the storage area, I have to challenge one of the things that the defense says repeatedly, which is that Mr. Davis had no access to this area and nothing in that room belonged to him. The testimony at trial was that the homeowner, Ms. Edwards, said that after Bernard Davis moved into the house, she never went upstairs again. She had no idea what he had stored up there. She said he could have had a pink elephant up there or in the storage room for all she knew. So regardless of what his legal rights were to be in the storage room, as a practical matter, he had full and free access to that storage room anytime. Also, the jury heard that Mr. Davis and one of the other homeowners, Mr. Baptiste, saw the police gathering outside the house before they came in, that Mr. Davis didn't respond when the police called for him to come down, and that someone who clearly turned out to be Mr. Davis tried to climb out the back window of the house as the police were coming in. So the jury could have also reasonably inferred that even if Mr. Davis didn't always store these things in the storage room, that when he realized the police were coming for him, he decided to start moving stuff out of his room and into the storage room. There were many pieces of evidence that connected Mr. Davis to the things in the storage room. Some were direct evidence, some were circumstantial evidence that you'd have to draw inferences from. The first is his statement a few months earlier to Ms. Edwards that he liked dealing drugs, he thought it was a better way to make a living than legitimate work, and that because his lifestyle was dangerous, he needed to possess a gun. Does that in and of itself prove any of the charges against him? Of course it doesn't. But in conjunction with the other evidence, it's substantial. Then you have the testimony from the ATF agent who testified that drug dealers regularly possessed guns and ammunition. And he said, by the way, that these people regularly have guns coming and going, and it's not unusual at all to find a gun with no ammunition, and it's not unusual to find ammunition with no matching gun. Then you have the fact that the evidence... This was a rifle, right? Yes. What was it? It was, I think, a Winchester .300 caliber, basically a hunting-type rifle, Your Honor. You have the evidence of what was in Mr. Davis' room, the marijuana packaged for sale, the baggies. And an interesting thing about the baggies, of course it's true, lots of people, lots of us have sandwich baggies in our house, but Officer Van Dyke, who searched that room, said that there didn't appear to be any what he called kitchen purpose for the baggies, because there was no other kind of kitchen or cooking or food equipment in the house. It's just this box of baggies in the same drawer with cash, his Social Security card, and more marijuana. So the jury certainly could have reasonably inferred, based on what he'd said and what he had in his room, that this man was dealing drugs. The box of baggies was in the storage room? No. The box of baggies was in the top drawer of Mr. Davis' dresser in his room with his Social Security card, his cash, and some but not all of his marijuana. So were there loose baggies found in the storage room? There were several, but there were baggies of marijuana in the storage room. So in the storage room there's a nightstand or a small table. In a drawer in that table are a few baggies of packaged marijuana, same kind of packaging, same weight, essentially, as the baggies in Mr. Davis' bedroom. And then there's the scale, also in that drawer. And then on top of the table in a case was the rifle. But the box of baggies were in his bedroom. In a drawer. Yes, top dresser drawer. What was the amount of cash that was in his room? It was about $200. And there were baggies, wrapped baggies of marijuana in his room as well. There were several baggies in plain view sitting on a stand or a shelf. So if you take the whole record, what's the evidence from which you contend that a rational jury could find, beyond a reasonable doubt, that he had control over the rifle? First, that he had the opportunity because he had full access to that room, that he had the motive to store it in that room because he knew the police were coming, that he had the motive to possess the rifle because there's a lot of evidence that he's a drug dealer and we know that drug dealers often possess firearms, and that the rifle is sitting right on top of the marijuana packaged in the same way, same weight as what's in his room, and right next to it, the scale. And the scale was an important thing because, again, there was a lot of evidence that the jury could conclude from that he's selling drugs. But there's no scale in his room. And that's significant because a scale is an essential basic tool of the drug dealer. The jury could have reasonably inferred that the scale that's with the drugs, packaged just like his, out in the storage room right next to his room, was his scale. Possibly that he moved out of there, again, because he knew the police were about to come up the stairs and get him. So it's the things besides his motive to possess the rifle, his opportunity to possess the rifle, and the things that the rifle are found with. These are all things that a jury can draw reasonable inferences from. And, of course, at this point, all the inferences have to be drawn in the government's favor. What's the significance of the Bulgarian bullet found in the dresser? Assuming he didn't possess the rifle, is the bullet enough in his dresser to affirm the conviction? Well, I'm sorry, you're saying assuming he did not possess the rifle? Assuming for argument. I'm not saying a jury couldn't conclude that. But if, for sake of argument, we concluded that, what's the significance of the bullet in his drawer? Well, the bullet conviction would still stand. They're separate counts. They stand alone. And the type of evidence that connected him to the bullet is different than the evidence that connected him to the rifle. And there'd be no reason for resentencing because it wouldn't alter the critical facts of his sentencing, the 15-year mandatory minimum for the armed career criminal. So, really, if for some reason the court found insufficient evidence on the rifle, it wouldn't change much of anything at all, Your Honor. There's no fingerprints on the rifle. Did you address the judicial notice request that you put before us on the separateness of the predicate offenses? Yes, Your Honor. I think that there's no question under the law that this court has the discretion, if it chooses, to take judicial notice of these publicly filed court documents. And there's no question that these documents resolve any issue about whether these were separate offenses. Is this something that we should refer back to the district court? No, Your Honor. I don't think you need to. I think it would be pointless to send this case back for resentencing on the armed career criminal issue because the facts that are in the documents we submitted with our request for judicial notice are the same facts that the court relied on that were in the PSR and that were not disputed. These basic facts of Mr. Davis's, the facts underlying these prior convictions, Mr. Davis has never disputed them. He has, at the trial court, very carefully and very specifically and very explicitly, he objected to many, many things in the PSR. He never objected to the factual description of these offenses. What his argument wasn't, I didn't do it the way they said I did it in the PSR. His argument was the legal consequences that flow from those facts. His argument is, sure, it happened that way, but you have to treat that as a single criminal episode rather than discrete convictions. It was a legal argument. It was a legal issue. I think when you take a look at the facts either in the PSR or the very similar facts in the actual state court documents, it's very clear these were distinct episodes. He shoots out one woman's episode, one woman's window. He goes to a party. He's there for 10 minutes or so before getting thrown out, and then he assaults, beats, and robs a different woman on the street. He didn't admit to any of that, though. He entered an Alford plea to each of those charges. He entered an Alford plea, but in the plea agreement, he agreed that the court could consider the statement of probable cause as the factual basis. No, not as the factual basis, that the court could make a determination that there was sufficient. Yes, right, for the factual basis, that he could look. So effectively— He's not admitting to anything. It's just the court has to make its own assessment whether there was enough that happened to support his plea. Right, right. It's different. Yes, I agree. It's not the same thing as the defendant admitting to each of those facts. Right. That's absolutely right, Your Honor. He admitted that he committed the charged crimes, and he said that the court could consider the statement of probable cause. Right, and what's unique about this is that the records of conviction show that he agreed to that in the plea agreement, that the court could consider it. Many times when there was an Alford plea, nobody agrees to anything, and it's just he enters a plea because it's a good deal, and nobody really knows what the defendant pled guilty to. That's right, Your Honors. And I see I'm out of time, so unless Your Honors have any other questions, thank you very much. Okay. Thank you. Is there a question down here? That's fine. Thank you. If not, there's a little rebuttal time left. Yes, thanks. I'll make just a few comments. I also wanted to point out when the government was just arguing, they said a few times there's a lot of evidence he's a drug dealer. But, again, that lot of evidence is because when driving home from Kentucky Fried Chicken, he said it's easier to sell drugs than to work at Kentucky Fried Chicken. That's the only thing, the only evidence that he's a drug dealer was that. And then the evidence here. Why can't they take his words and use it again? But I'm not. That's not. He didn't say I sell drugs, I am selling drugs. He said it's easier, you know, it's easier. They could draw an inference from that and make their argument. Well, certainly they can, but to make that the predicate of the fact that, therefore, any drugs in the house belong to him is a step that goes too far. They need to have some evidence that he's actually selling drugs. He doesn't have a lot of money. There is not even a lot of marijuana in there, even if it all belonged to him. And, you know, I don't want to get too far afield on that point. The only evidence linking him to the gun, really, is the testimony from the officer who came in and testified, the agent who came in and testified that drugs and guns go together. Motive. Yes. Statement. Yes. So there's three items. Yes, yes, yes. And it was, as you point out, a hunting rifle, not your typical put-in-your-pocket kind of rifle on the street. But that was it, just the testimony that it's possible that someone who sold drugs would also want to have a gun. And my time is up, so I'm happy to answer any further questions anyone might have. Judge Fischer, Judge Peza. I'm fine. Thank you very much. No questions, so thank you. Okay. Thank you. The Davis case, United States v. Davis, is submitted. We thank our counsel for excellent arguments.
judges: Fisher, Gould, Paez